IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-889

UNIVERSITY OF COLORADO HOSPITAL AUTHORITY,
a body corporate and political subdivision of the State of Colorado,

    Plaintiff,

v.

KIDNEYLIFE FOUNDATION, INC. d/b/a NATIONAL KIDNEY REGISTRY,
a New York not-for-profit corporation,

    Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff, University of Colorado Hospital Authority, by and through counsel, for its Complaint against defendant KidneyLife Foundation, Inc., doing business as National Kidney Registry, states as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff, University of Colorado Hospital Authority ("UCH"), is a body corporate and political subdivision of the State of Colorado that operates the University Hospital.

2. UCH is a citizen of the State of Colorado with a principal place of business of 12401 E. 17th Avenue, Aurora, Colorado.

3. UCH's patient services include kidney transplant services.

4. Defendant KidneyLife Foundation, Inc., doing business as National Kidney Registry ("NKR"), is a New York not-for-profit corporation that operates a national registry listing kidney donors and recipients in need of a kidney transplant, specifically including kidney donors and recipients from member transplant centers ("Member Centers") in Colorado, including Member Center UCH.

5. NKR is a citizen of the State of New York with a principal place of business of 42 Fire Island Avenue, Babylon, New York.

1

6. NKR's operations in the State of Colorado include, but are not limited to: enrolling Colorado Member Centers into the NKR program; performing computerized matched runs for Colorado Member Center kidney donors and recipients to find paired exchange matches; database management including storing and securing confidential patient information of Colorado donors, recipients and Member Centers; coordinating and facilitating kidney shipping into and out of the State of Colorado; facilitating kidney transplants in the State of Colorado; facilitating pre-operative serology and COVID PCR testing in the State of Colorado; and performing billing agent services on behalf of Colorado Member Centers relating to kidney transplants in the State of Colorado.

7. This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000 and the Colorado citizenship of plaintiff UCH is different from the New York citizenship of defendant NKR.

8. Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial District and because defendant NKR is subject to the Court's personal jurisdiction with respect to this action.

## THE PARTIES' AGREEMENTS AND AMENDMENTS

9. On or about December 3, 2015, UCH and NKR entered into that certain Service Contract (the "Service Contract"), with an effective date of December 3, 2015, pursuant to which UCH began enrolling participants into the NKR program and NKR agreed to perform computerized match runs to find paired exchange matches and to coordinate and facilitate kidney transplants for UCH patients.

10. On about December 3, 2015, UCH and NKR entered into that certain Donor Center Agreement (the "Donor Center Agreement"), with an effective date of December 3, 2015, in which UCH agreed to participate in paired exchanges organized by NKR.

11. On or about December 3, 2015, UCH and NKR entered into that certain Amendment (the "First Amendment"), with an effective date of December 3, 2015, in which UCH and NKR agreed to modify the NKR Member Center Terms and Conditions by amending the Service Contract.

12. On or about December 4, 2015, UCH and NKR entered into that certain Recipient Center Agreement (the "Recipient Center Agreement"), in which UCH agreed to participate in paired exchanges organized by NKR; and

13. On or about December 18, 2015, UCH and NKR entered into that certain All In Addendum agreement (the "All In Addendum"), with an effective date of December 18, 2015, in which UCH agreed to participate in the NKR program as an "All In" Member

Center pursuant to the definition of "All In" in Section I of the NKR Member Center Terms & Conditions.

14. On or about October 17, 2016, UCH executed that certain Donor Protection Addendum (the "Donor Protection Addendum").

15. On or about September 1, 2017, UCH executed that certain Donor Care Network Agreement (the "Donor Care Network Agreement"), with an effective date of September 1, 2017, in which UCH agreed to be a Donor Care Network Center of Excellence as defined and described in the Donor Care Network Terms and Conditions document then posted on the NKR website login page.

16. Collectively, the Service Contract, the Donor Center Agreement, the Recipient Center Agreement, the First Amendment, the All In Addendum, the Donor Protection Addendum, and the Donor Care Network Agreement, are referred to herein as the "Agreements."

## THE PARTIES' DISPUTES

17. UCH, in its capacity as a body corporate and political subdivision of the State of Colorado, conducted a review of the Agreements to examine compliance with applicable law governing NKR, UCH, and the Agreements, including, but not limited to the following standard terms and conditions that UCH routinely requires of third party vendors as a body corporate and political subdivision of the State of Colorado and as a Colorado licensed and Medicare and Medicaid certified hospital (collectively "Applicable Law"):

   a. In accordance with 42 U.S.C. § 1395x(v)(1)(a)(i) and the implementing regulations at 42 C.F.R. § 420.302(a) & (b), NKR's awareness of, and compliance with, NKR's obligations to provide access to the Department of Health and Human Services ("HHS") and the Comptroller General of the United States, to books, documents and records as necessary to verify the nature and extent of the costs of services furnished by NKR under the Agreements;

   b. NKR's awareness of, and compliance with, the UCH Code of Conduct implemented as part of UCH's corporate compliance program to meet the Office of Inspector General of the HHS initiative encouraging health care providers to engage in efforts to combat fraud and abuse in health care, and guidance from the Colorado Department of Public Health and Environment;

   c. NKR's awareness of, and compliance with, NKR's obligations with respect to the treatment of certain confidential information,

3

603245746.8

specifically including UCH patient information that meets the definition of "protected health information" under 45 C.F.R. § 160.103;

d. NKR's awareness of, and compliance with, NKR's obligations as a "Third-Party Service Provider," as defined in C.R.S. §§ 6-1-713.5(5) and 6-1-716(1)(i): (i) with respect to maintaining, storing and processing "Personal Identifying Information," as defined in C.R.S. § 6-1-713(2)(b), and/or "Personal Information, as defined in in C.R.S. § 6-1-716(1)(g); (ii) with respect to implementing and maintaining reasonable security procedures and practices to protect Personal Identifying Information disclosed to NKR; and (iii) with respect to NKR's obligation to provide notice of a Security Breach of Personal Information to UCH's Privacy Officer in accordance with C.R.S. § 6-1-716(2)(b);

e. NKR's awareness of, and compliance with, NKR's obligations to represent and warrant to UCH that neither NKR, or any of its parents, affiliates or subsidiaries: (i) are excluded from participation under any federal health care program, as defined under 42 U.S.C. § 1320a-7b(f) (the "Federal Healthcare Program") or any state healthcare programs; (ii) have been convicted of a criminal offense related to the provision of healthcare items or services but have not yet been excluded, debarred, or otherwise declared ineligible to participate in the Federal Healthcare Programs or any state healthcare programs; (iii) are under investigation or otherwise aware of any circumstances which may result in NKR being excluded from participation in any Federal Healthcare Programs or state healthcare programs; (iv) have been subject to or have pending against them a final adverse action, as such term is defined under 42 U.S.C. § 1320a-7e(g); (v) will use employees, agents or contractors who are excluded from participation under any Federal healthcare Programs or any state healthcare programs in connection with products provided or services performed under the Agreements;

f. NKR's awareness and acknowledgement of UCH's status as a body corporate and political subdivision of the State of Colorado subject to the Colorado Governmental Immunity Act ("CGIA"), C.R.S. § 24-10-101, *et. seq.*, which includes provisions limiting UCH's liability in any action that lies in tort or could lie in tort, and that nothing in the Agreements shall or may be construed or interpreted as a waiver, either express or implied, of any of the

4

  immunities, rights, benefits or protections provided to UCH under the CGIA;

 g. NKR's awareness of, and compliance with, NKR's obligation to refrain from discrimination in any unlawful manner and to abide by the requirements of 41 C.F.R. §§ 60-1.4(a), 60-300.5(a) and 60.741.5(a), which regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, prohibit discrimination against all individuals based on their race, color, sex, sexual orientation, gender identity or national origin, and require affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, national origin, sexual orientation, gender identity, protected veteran status or disability;

 h. NKR's awareness of, and compliance with, NKR's obligations as a party to a Public Contract for Services, as defined by C.R.S. § 8-17.5-101(6), with respect to employment or contracting of undocumented immigrants to perform work under the Agreements; and

 i. NKR's awareness of, and compliance with, NKR's obligations with respect to The Common Rule regulating human subjects research as codified at 45 C.F.R. Part 46.

Assuring compliance with the Applicable Laws was one of the factors in UCH presenting the Proposed Second Amendment (as defined in Paragraph 19).

18.  UCH also conducted a review of the Agreements to examine compliance with the National Organ Transplant Act of 1984, Pub L. 98-507, 98 Stat. 2339-2348 (Oct. 19, 1984), as amended ("NOTA").

 a. Under NOTA, the Organ Procurement and Transplantation Network ("OPTN") was created to maintain a national registry for organ matching. OPTN policies regulate living organ donation programs such as that run by NKR. NOTA generally prohibits the sale of organs. Specifically, NOTA provides, "It shall be unlawful for any person to knowingly acquire, receive, or otherwise transfer any human organ for valuable consideration for use in human transplantation if the transfer affects interstate commerce." 42 U.S.C. § 274e(a). NOTA contains an exception for "reasonable payments associated with the removal, transportation, implantation, processing, preservation, quality control, and storage of a human organ or the expenses of travel, housing, and lost wages incurred

      by the donor of a human organ in connection with the donation of the [paired donation] organ." 42 U.S.C. § 274e(c)(2).

b. Additionally, as it relates to human organ paired donation, NOTA's general prohibition on the sale of organs does not apply, because NOTA permits "valuable consideration" insofar as a kidney donor in a chain started by NKR may also be promised a donated kidney match back to a designated individual. 42 U.S.C. § 274e(c)(4)(E). However, this limited exception for the return of a matched kidney as it relates to "valuable consideration," does not permit any person or entity to profit from the sale of organs. 42 U.S.C. § 274e(c)(4)(F).

c. Under the Agreements, as an All In Member Center UCH is required to pay NKR for various such reasonable payments associated with the removal, transportation, implantation, processing, preservation, quality control, and storage of a human organ or the expenses of travel, housing, and lost wages incurred by the donor of a human organ in connection with the paired donation of the organ.

d. However, in addition, under its construction of Section I.3. of the NKR Terms and Conditions -- and by way of the "Invoice," as defined in Paragraph 29 below -- NKR now seeks to impose a $1,000 per kidney per month penalty payment -- <u>that survives the Agreement in perpetuity</u> -- for any "deficit" in kidneys at the time of expiration or termination of the All In Addendum, with a deficit being an elastic number calculated as the then-current difference between the number of kidney donation chains the All In Member Center has started minus the number of kidneys the All In Member Center has received for transplantation, adjusted for kidneys still owed to patients of the All In Member Center under NKR's voucher program, at the time of expiration or termination. This penalty, by definition, bears no relationship to the costs associated with facilitating paired organ donation and, if paid as demanded by NKR and outlined in Paragraph 29, results in a payment to NKR that is exactly the type of profiting on organs prohibited by NOTA. Accordingly, NKR's Invoice and enforcement of this provision against UCH would be contrary to public policy as it is in violation of NOTA.

e. UCH's Proposed Second Amendment would have removed this objectionable payment obligation under NOTA by reconciling any kidneys that NKR alleges are "owed" to NKR under the Agreements

6

through UCH agreeing to start eight (8) additional kidney chains in the six (6) subsequent months, which would give it sufficient time to meet NKR's demand. The Proposed Second Amendment would also transition UCH permanently out of NKR's All In Member Center model under Section I.3 of the NKR Member Center Terms & Conditions (defined in Paragraph 21 below), which NKR construes to subject All In Members who opt out to thousands of dollars in monthly penalties "in perpetuity" in violation of NOTA's prohibition on the sale of human organs.

19. On January 27, 2021, Richard P. Church, Esq., outside counsel for UCH, emailed to NKR the correspondence attached hereto and incorporated herein as Exhibit 1 (the "January 27, 2021 UCH Letter"), for the purpose of proposing a modification of the Agreements to clarify and express the parties' obligations to comply with the above Applicable Law and for the purpose of proposing an agreement to mutually agree to terminate UCH's status as an All In Center. To document the specific proposed changes to the Agreements necessary to accomplish these purposes, the January 27, 2021 UCH Letter enclosed a suggested draft Second Amendment to the Master Services Agreement, in the form attached hereto and incorporated herein as Exhibit 2 (the "Proposed Second Amendment").

20. On February 2, 2021, NKR's outside counsel, Timothy Wan, Esq., emailed to UCH's outside counsel, Mr. Church, the correspondence attached hereto and incorporated herein as Exhibit 3 (the "February 2, 2021 NKR Letter"), which stated that NKR "will not negotiate" UCH's proposed modification of the agreements to comply with Applicable Law and wrongly characterized the January 27, 2021 UCH Letter and its enclosed Proposed Second Amendment as a voluntary termination and cancellation by UCH of the All In Addendum.

21. NKR's mischaracterization of the January 27, 2021 UCH Letter as a voluntary termination of the All In Addendum threatens to subject UCH to thousands of dollars in monthly fees, "in perpetuity," pursuant to Section I.3 of the NKR Member Center Terms & Conditions (the "NKR Member Center Terms and Conditions" are attached to Exhibit 2 as Exhibit A, specifically at p. 23 of Exhibit 2), and as outlined above in violation of NOTA.

22. Mr. Wan's February 2, 2021 NKR Letter inquired as to whether UCH would like to schedule an informal Dispute Resolution meeting under Section VII.10 of the First Amendment (the First Amendment is attached hereto and incorporated herein as Exhibit 4).

23. On February 17, 2021, UCH's outside counsel, Mr. Church, and NKR's outside counsel, Mr. Wan, communicated by telephone to discuss UCH's Proposed

Second Amendment and NKR's reaction to, and mischaracterization of, UCH's Proposed Second Amendment.

24. On February 18, 2021, February 20, 2021, and on February 22, 2021, UCH's outside counsel, Mr. Church, and NKR's outside counsel, Mr. Wan, exchanged the emails attached hereto and incorporated herein as Exhibit 5, in which UCH's Mr. Church confirmed that the January 27, 2021 UCH Letter enclosing UCH's Proposed Second Amendment "does not constitute a notice of termination."

25. On March 3, 2021, UCH's outside counsel, Mr. Church, emailed to NKR's Mr. Wan the correspondence attached hereto and incorporated herein as Exhibit 6 (the "March 27, 2021 UCHealth Letter"), clarifying:

> for the avoidance of doubt, my client has taken no action and expressed no intent to unilaterally terminate its status as an All In Center. Instead, UCHealth continues to identify non-directed donors and enter them into the NKR database. As noted in my email of February 20, 2021, in this regard, your client's dissatisfaction with our initial proposal does not transform the [January 27, 2021] UCH Letter into a termination, particularly given the [January 27, 2021] UCH Letter does not state it constitutes an immediate termination and when UCH has not acted unilaterally against NKR. As such, any action by NKR taken against UCHealth under the theory that the UCH Letter constituted a termination notice mischaracterizes the UCH Letter and would be in breach of the Agreement.

Exhibit 6 at p. 2.

26. The March 3, 2021 UCH Letter enclosed a revised proposed Second Amendment for the purposes of facilitating negotiations of a mutually-acceptable written modification addressing the parties' obligations under Applicable Law and to support the transition of UCH to a Member Center only. Specifically, UCH proposed that it would initiate an additional eight (8) unpaired kidney exchanges to address the key contractual issue raised by NKR through Mr. Wan in the February 17, 2021 call. Exhibit 6 at p. 3.

27. On March 8, 2021, NKR's outside counsel, Mr. Wan, issued to Mr. Church the email attached hereto and incorporated herein as Exhibit 7, stating: "rather than you and I wasting time as intermediaries, I believe we need to trigger the Dispute Resolution clause. Please advise of the dates and times of availability that [UCH's] Mr. Gronow can speak with [NKR's] Mr. Hil."

28. In response, on March 12, 2021, UCH's outside counsel, Mr. Church, emailed to NKR's Mr. Wan the correspondence attached hereto and incorporated herein as Exhibit 8, stating:

> University of Colorado Hospital Authority ("UCHealth") is amenable to proceeding with dispute resolution as requested by KidneyLife Foundation, Inc. d/b/a National Kidney Registry ("NKR"). Pursuant to Section VII.10 of the First Amendment to the Agreement [Exhibit 4 hereto at p. 2] …, UCHealth designates Thomas Gronow, Chief Operating Officer, as the senior management representative who does not devote substantially all of his time to the performance of the Service Contract.
>
> As required by Section VII.10, we would propose March 31, 2021 as the date for the parties to share non-privileged material with respect to the dispute that is appropriate and germane along with position statements. Please ensure that NKR explains its understanding of the contractual or other legal dispute as UCHealth is not aware of what NKR believes to be the dispute, position, and relevance of the materials provided to the same. We anticipate that the Dispute Resolution meeting could then occur 10 to 14 days later to give each party adequate time to review the other party's non-privileged material and position statements.

29. On or about March 17, 2021, UCH determined that on February 28, 2021, NKR issued Invoice Number 21020015 (the "Invoice") as if UCH was no longer an All In Member Center, applying an unjustified penalty calculated based on UCH's "deficit" of eight (8) unpaired kidney exchanges. Specifically, the Invoice includes a Center Connectivity fee of $8,275. On or about March 17, 2021, NKR informed Denise Harrington, UCH's Director of Transplant Business that NKR increased the amount of the Center Connectivity fee, which had previously been $275 per month, by the amount of $8,000 per month, to the new amount of $8,275 per month in perpetuity, as result of NKR's unilateral action to apply Section I.3. against UCH.

30. Upon information and belief, Mr. Hil, the founder, CEO, and one of only three board members of NKR, has a personal financial interest in enforcing Section I.3. against UCH. Specifically, notwithstanding that NKR is organized as a nonprofit corporation under New York law, in publicly filed IRS Form 990s for calendar year 2018 (the most recent date that is currently publicly available), which are attached hereto and incorporated herein as Exhibit 9, NKR reported $9,927,288 in revenue and $9,507,230 in expense, of which $3,371,039 is paid to Hil & Co, LLC, in a series of related party transactions. Accordingly, due to NKR's self-dealing with Mr. Hil, more than one-third (1/3rd) of NKR's revenues and expenses actually inure to Mr. Hil's personal private benefit.

31. UCH proposed three (3) specific dates and times for the parties and their counsel to conduct the informal Dispute Resolution meeting under Section VII.10 of the First Amendment (Exhibit 4 hereto) in a series of email exchanges between Mr. Church and Mr. Wan from March 12, 2021 until March 25, 2021, attached hereto and incorporated herein as Exhibit 10. Notwithstanding that nothing in the Dispute

9

Resolution provision excludes attorneys from the process, NKR has failed and refused to participate in the informal Dispute Resolution process, unreasonably maintaining without support that "informal" means "not having attorneys present." Ultimately, on March 25, 2021, NKR's outside counsel Mr. Wan stated: "If UCH is preventing [UCH's] Mr. Gronow from having an informal phone call with Mr. Hil, then, you have left us with no choice but to maintain our position that UCH terminated the All-In Addendum, and converted UCH to a regular Member Center." <u>Exhibit 10</u> at p. 1.

32. Thus, after demanding its application, NKR has failed and refused to comply in good faith with the Dispute Resolution provisions in Section VII.10 of the First Amendment to the Agreement. Further, NKR has taken unilateral action against and begun invoicing UCH the amount of $8,000.00 per month as if it had in fact terminated the All In Addendum notwithstanding the content of the January 27, 2021 UCH Letter, UCH's repeated statements that the January 27, 2021 UCH Letter did not constitute a termination of the All In Addendum, and UCH's continued good faith compliance the terms of the Agreements.

33. Accordingly, pursuant to Section VII.10 of the First Amendment to the Agreement, UCH's designated representative Mr. Gronow has reasonably and justifiably "conclude[d] that resolution through continued negotiation does not appear likely," all conditions precedent to this civil action are satisfied, and this matter is now ripe for determination by the Court.

## FIRST CLAIM FOR RELIEF
(Declaratory Judgment Under 28 U.S.C. § 2201 and Fed.R.Civ.P. 57)

34. Plaintiff UCH incorporates the allegations set forth above as though fully set forth herein.

35. Pursuant to 28 U.S.C. § 2201(a), this Court "[i]n a case of actual controversy within its jurisdiction, . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

36. Fed.R.Civ.P. Rule 57 provides: "These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201."

37. A controversy exists between the parties arising out of the January 27, 2021 UCHealth Letter.

38. More particularly, UCH maintains that the language and purpose of the January 27, 2021 UCH Letter was to propose a modification of the Agreements to clarify and express the parties' obligations to comply with the above Applicable Law and for the purpose of proposing contract provisions to facilitate the transition of UCH away from its All In status to a regular Member Center only. Further, UCH denies that the

10

January 27, 2021 UCH Letter constituted a unilateral termination of the All In Addendum. Instead, NKR's assertion of unilateral termination was a bad faith response to UCH's reasonable request that NKR acknowledge the existence of, and agree to comply with, the above Applicable Law.

39. NKR, as expressed in its February 2, 2021 NKR Letter, maintains that the January 27, 2021 UCH Letter and its enclosed Proposed Second Amendment somehow constituted a voluntary termination and cancellation by UCH of the All In Addendum.

40. NKR's mischaracterization of the January 27, 2021 UCH Letter as a voluntary termination threatens to subject UCH to thousands of dollars in monthly fees, in perpetuity, pursuant to Section I.3 of the NKR Member Center Terms & Conditions (attached to Exhibit 2 as Exhibit A, specifically at p. 23 of Exhibit 2), which NKR has begun charging as documented in the Revised February 28, 2021 Invoice.

41. UCH maintains that the provisions for perpetual monthly fees in Section I.3 of the NKR Member Center Terms & Conditions are unconscionable, anti-competitive and contrary to law, specifically NOTA, and therefore not enforceable.

42. UCH respectfully requests a declaration of the parties' rights and obligations under the Agreements pursuant to 28 U.S.C. § 2201(a). More specifically, UCH requests that the Court declare as follows:

   a. The January 27, 2021 UCH Letter did not constitute a unilateral termination by UCH of the All In Addendum;

   b. NKR's mischaracterization of the January 27, 2021 UCH Letter as a unilateral termination was a bad faith response to UCH's reasonable request that NKR acknowledge the existence of, and agree to comply with, the above Applicable Law;

   c. UCH has the right to transition away from its All In status to a regular Member Center only, without being subject to monthly fees, in perpetuity, pursuant to Section I.3 of the Member Center Terms & Conditions;

   d. The provisions for perpetual monthly fees in Section I.3 of the NKR Member Center Terms & Conditions are unconscionable, anti-competitive and contrary to law, specifically NOTA, and therefore not enforceable; and

   e. UCH as the prevailing party in this civil action is entitled to recover all reasonable costs and expenses, including attorneys' fees, pursuant to First Amendment Section 5.

## SECOND CLAIM FOR RELIEF
(Breach of Contract)

43.     Plaintiff UCH incorporates the allegations set forth above as though fully set forth herein.

44.     UCH and NKR are parties to the Agreements, as described above.

45.     The parties have a duty to act in good faith in their performance of the Agreements.

46.     UCH has performed its obligations under the Agreements.

47.     NKR breached the Agreements by altering its accounting of UCH's NKR transplant chains subsequent to the January 27, 2021 UCHealth Letter. NKR altered its accounting of UCH's NKR transplant chains in bad faith retaliation for the proposal contained in UCH's January 27, 2021 Letter that NKR acknowledge the existence of, and agree to comply with, the above Applicable Law.

48.     NKR breached its duty to act in good faith under the Agreements by mischaracterizing the January 27, 2021 UCH Letter as a unilateral termination. This mischaracterization was a bad faith response to UCH's reasonable request that NKR acknowledge the existence of, and agree to comply with, the above Applicable Law.

49.     NKR's breaches of the Agreements have caused and will continue to cause UCH to suffer damages in an amount to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, UCH prays for the following relief:

1.      A declaration of the parties' rights and obligations under the Agreements pursuant to 28 U.S.C. § 2201(a). More specifically, UCH requests that the Court declare as follows:

   a.   The January 27, 2021 UCH Letter did not constitute a unilateral termination by UCH of the All In Addendum;

   b.   NKR's mischaracterization of the January 27, 2021 UCH Letter as a unilateral termination was a bad faith response to UCH's reasonable request that NKR acknowledge the existence of, and agree to comply with, the above Applicable Law;

603245746.8

      c.      UCH has the right to transition away from its All In status to a regular Member Center only, without being subject to monthly fees, in perpetuity, pursuant to Section I.3 of the Member Center Terms & Conditions;

      d.      The provisions for perpetual monthly fees in Section I.3 of the NKR Member Center Terms & Conditions are unconscionable, anti-competitive and contrary to law, specifically NOTA, and therefore not enforceable; and

      e.      UCH as the prevailing party in this civil action is entitled to recover all reasonable costs and expenses, including attorneys' fees, pursuant to First Amendment Section 5.

    2.    Direct, consequential, special, and liquidated damages;

    3.    Attorney fees and costs, including expert witness fees, pursuant to Section 5 of the First Amendment, <u>Exhibit 4</u> hereto;

    4.    Prejudgment and other interest as permitted by law; and

    5.    Such further relief as this Court deems just and proper.

**PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 26th day of March, 2021.

          <u>s/Stephen D. Gurr</u>
          Stephen D. Gurr
          M. Adam Lewis
          Cynthia Lowery-Graber
          BRYAN CAVE LEIGHTON PAISNER LLP
          1700 Lincoln Street, Suite 4100
          Denver, CO 80203
          (303)-861-7000
          steve.gurr@bclplaw.com
          adam.lewis@bclplaw.com
          cynthia.lowery-graber@bclplaw.com

          *Counsel for Plaintiff*

<u>Plaintiff's address</u>:
12401 E. 17th Avenue
Aurora, Colorado 80045