**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 21-cv-00889-NYW

UNIVERSITY OF COLORADO HOSPITAL AUTHORITY,
a body corporate and political subdivision of the State of Colorado,

      Plaintiff,

v.

KIDNEYLIFE FOUNDATION, INC. d/b/a NATIONAL KIDNEY REGISTRY,
a New York not-for-profit corporation,

      Defendant.

---

**MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND JURY DEMAND**

---

Defendant KidneyLife Foundation, Inc. d/b/a National Kidney Registry ("NKR") moves pursuant to F.R.C.P. 12(b)(6) to dismiss Plaintiff University of Colorado Hospital Authority's ("UCHealth") Complaint and Jury Demand ("Complaint") and states as follows:

## I.      INTRODUCTION

This lawsuit represents a shameless and transparent attempt by a multi-billion dollar health system, UCHealth, to bully a small non-profit, NKR, into accepting new, amended contract terms to which NKR does not agree and is not required to agree. Rather than accepting that NKR does not agree to UCHealth's proposed contract amendments, or terminating its contract relationship with NKR altogether, UCHealth requests that this Court force UCHealth's desired contract amendments on NKR. However, UCHealth has no legal basis for its attempt to do so or its alleged claims, and entertaining UCHealth's wholly meritless case would be a waste of the Court's time and resources. Accordingly, for the reasons stated herein, both of UCHealth's alleged claims should be dismissed.

## II.    BACKGROUND

NKR is a non-profit which pairs kidney donors and recipients in need of a kidney transplant.  Compl. ¶ 4.  NKR works with its member transplant centers to coordinate and maintain a national list of potential donors and recipients and thereby expand the pool of potential donors and recipients beyond the walls of the individual transplant centers.  *See id.* NKR also facilitates kidney exchanges; for example, if a recipient has a loved one who wishes to donate a kidney but is a poor match (or not a match at all) for the recipient, NKR assists in coordinating a paired exchange swap or a chain of donations involving other similarly situated individuals.  *See* Compl. ¶ 6.  Without an intermediary such as NKR, individual transplant centers generally do not compare their internal lists of potential donors and recipients to determine if, for example, one transplant center has a donor who is a good match for a recipient elsewhere.  NKR's nationwide network provides recipients the best chance of finding a well-matched donor, thereby increasing survival rates and improving recipient outcomes.

A transplant center may contract with NKR to be either a Member Center or an All-In/Partner Center.  *See generally* Ex. 2 to Compl. at 23.  In December 2015, UCHealth and NKR signed a series of agreements (the "Agreements"), pursuant to which UCHealth became an All-In/Partner Center.  Compl. ¶¶ 9-16.  Per the Member Center Terms & Conditions to which UCHealth agreed to be bound, All In/Partner Centers are those which execute and are in compliance with the All In Addendum.  Ex. 2 to Compl. at 23, Section I.3. (second).[1]  NKR also has the right to revoke All-In/Partner Center status at any time.  *Id.*  All-In/Partner Centers agree, among undertaking other duties, to enter all donor pairs and non-directed donors—*i.e.*, "Good

---

[1] The Member Center Terms & Conditions attached to the Complaint erroneously label two different sections as I.3.  This Motion refers to the second Section I.3 as "Section I.3 (second)" and the first Section I.3 as simply "Section I.3."

Samaritan" donors willing to donate a kidney to anyone in need and not paired with a particular recipient—into NKR's nationwide database.  *See* Ex. 2 at 23 § I.4.

Member Centers are not subject to the same requirements as All-In/Partner Centers and are not similarly required to enter all donors into the NKR database.  *See* Ex. 2 to Compl. at 23 § I.4.  Thus, it is important to ensure that Member Centers do not take more kidneys out of the NKR system than they put in, and Member Centers are required to either "not have net chains started (NCS) less than 0" or pay a fee of $1,000 per NCS deficit.  *Id.* at § I.3.  For example, an NCS of -2 in a given month requires payment of $2,000.  *Id.*  The payment is not fixed "in perpetuity" as UCHealth alleges but rather, per the plain terms of Section I.3 and as UCHealth was informed and acknowledges, is elastic depending on the NCS number that month.  *Id.*; *see also* Compl. ¶ 29; Ex. 3 to Compl. at ¶ 3 (stating NKR will "adjust the monthly billed amount [for Section I.3 fees] based on the UCH NCS deficit at month end").  And, the payment is avoidable—a Member Center may comply with Section I.3 by ensuring its NCS number is 0 or positive.  All In/Partner Centers are not subject to the Section I.3 requirement.  *See* Ex. 2 to Compl. at 23, Section I.3(A).  Thus, a transplant center such a UCHealth may either elect to be a Member Center, and be subject to the Section I.3 requirements, or elect to be an All In/Partner Center (subject to NKR's right to revoke that status), and not be subject to Section I.3.

On January 27, 2021, more than five years after the parties first entered their contractual arrangement in 2015, UCHealth without warning sent a letter notifying NKR of its "election to no longer be an All In Center or subject to the obligations of Section I.3. of the Member Center Terms and Conditions," and attaching a 38-page proposed Second Amendment to the Agreements reflecting its desired new arrangement.  Compl. at ¶ 19, *id.* at Ex. 1-2.  However, nothing in the Agreements or Member Center Terms & Conditions permits a transplant center to

elect to be a Member Center and to also avoid being subject to the Section I.3 requirements.  And NKR was under no obligation to agree to UCHealth's proposed new contractual amendments.

Based on UCHealth's statement that it had "elect[ed] to no longer be an All In Center", NKR notified UCHealth that it considered UCHealth to have voluntarily terminated the All In Addendum and was now a Member Center.  NKR further notified UCHealth that it would not agree to UCHealth's proposal that it be a Member Center but not subject to Section I.3.  When UCHealth was unable to achieve its desired contractual amendment through negotiations, it filed this lawsuit, asking the Court to impose its proposed contractual amendment on NKR.

### III.    LEGAL STANDARD

A Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  The plaintiff must frame a complaint with enough factual matter, when taken as true, to suggest that he or she is entitled to relief.  *Chang v. Vail Resorts, Inc.*, 15-CV-01731-REB-NYW, 2016 WL 590375, at *2 (D. Colo. Feb. 12, 2016), *report and recommendation adopted*, 15-CV-01731-REB-NYW, 2016 WL 1039912 (D. Colo. Mar. 15, 2016) (citing *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008).  While the Court's analysis is typically focused on the allegations as set forth within the four corners of the complaint, the Court may consider the documents referred to in the complaint that are central to the claims without converting the motion to dismiss into one for summary judgment.  *Id*. (citing *Grynberg v. Koch Gateway Pipeline Co.,* 390 F.3d 1276, 1279 n.1 (10th Cir. 2004)).

The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Id*. (quoting *Forest Guardians v. Forsgren,* 478 F.3d 1149, 1160 (10th Cir. 2007)).  Plaintiff must offer sufficient factual allegations to raise the right to relief beyond a speculative level to a plausible one.  *Id*. (citing *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d

1210, 1214 (10th Cir. 2011)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC*, 656 F.3d at 1215). But "mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Id*. (quoting *Kan. Penn*, 656 F.3d at 1214). Additionally, "[a] dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory." *Gebremedhin v. Am. Family Mut. Ins. Co.*, 13-CV-02813-CMA-NYW, 2015 WL 1539600, at *4 (D. Colo. Mar. 31, 2015). Thus, "[d]ismissal is appropriate if the law simply affords no relief." *Commonwealth Prop. Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011).

## IV.   ARGUMENT

For the reasons discussed below, Plaintiff's claims for relief for declaratory judgment and breach of contract should both be dismissed.

### A.   UCHealth's declaratory judgment claim fails to state a claim for relief.

UCHealth's First Claim for Relief purports to seek, pursuant to 28 U.S.C. § 2201, the following five declarations:

> a. The January 27, 2021 UCH Letter did not constitute a unilateral termination by UCH of the All In Addendum;

> b. NKR's mischaracterization of the January 27, 2021 UCH Letter as a unilateral termination was a bad faith response to UCH's reasonable request that NKR acknowledge the existence of, and agree to comply with, the above Applicable Law;

> c. UCH has the right to transition away from its All In status to a regular Member Center only, without being subject to monthly fees, in perpetuity, pursuant to Section I.3 of the Member Center Terms & Conditions;

d. The provisions for perpetual monthly fees in Section I.3 of the NKR Member Center Terms & Conditions are unconscionable, anti-competitive and contrary to law, specifically NOTA, and therefore not enforceable; and

e. UCH as the prevailing party in this civil action is entitled to recover all reasonable costs and expenses, including attorneys' fees, pursuant to First Amendment Section 5.

Compl. ¶ 42. As a threshold matter, declaratory judgment is not itself a cause of action but rather a form of relief. *Commonwealth*, 680 F.3d at 1202.  Because UCHealth pleaded a purported declaratory judgment claim as a stand-alone claim without pleading any underlying cause of action, the Court's "first task is to determine exactly what cause or causes of action [UCHealth] is asserting." *Id.*  "A federal court applying the Declaratory Judgment Act must evaluate the parties' rights based on the same body of substantive law that would apply in a conventional action." *Med. Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 377 (7th Cir. 2010).  Because UCHealth "asserted no federal claims and brought this case in diversity, its claims for relief must be grounded in state law." *Commonwealth*, 680 F.3d at 1202.

However, no Colorado common or statutory law affords UCHealth any of the alleged "rights" it seeks to vindicate in its requested declaratory relief.  Nor has UCHealth made any such allegation in the Complaint.  The First Claim for Relief thus fails to state a claim upon which relief may be granted and should be dismissed.  *Long v. Wells Fargo Bank, N.A.*, 670 F. App'x 670, 671 (10th Cir. 2016) (unpublished) (affirming district court's dismissal of request for declaratory relief where no "judicially remediable right" existed to support claim) (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (holding the availability of declaratory judgment presupposes the existence of a judicially remediable right)).

**1.    UCHealth has no contractual or legal basis for its demand that it both be a Member Center and not subject to Section I.3.**

The crux of UCHealth's case is found in its first and third requested declarations.  It asks the Court to declare that (1) UCHealth's notifying NKR in the January 27, 2021 letter of "UCHealth's election to no longer be an All In Center or subject to the obligations of Section I.3. of the Member Center Terms and Conditions" was not a "unilateral termination" of the All In Addendum; but (2) UCHealth purportedly has the "right to transition away from its All In status to a regular Member Center only, without being subject to monthly fees, in perpetuity, pursuant to Section I.3 of the Member Center Terms & Conditions."  *See* Compl. ¶¶ 42.a.-b and Ex. 1. There is no legal basis for these requested declarations, and they fail to state a claim.

As to the requested declaration in Paragraph 42.a, UCHealth's only conceivable reason for its vehement insistence that it did not "unilaterally" terminate the All In Addendum but rather sought a "mutual" termination of the All In Addendum was because UCHealth hoped, as part of a such a "mutual" agreement, to force NKR to also agree that UCHealth would not be subject to the Section I.3 requirements as a Member Center.[2]  NKR did not agree to such an arrangement, and thus in Paragraph 42.c., UCHealth requests that this Court declare that UCHealth has the "right" to both be a Member Center and not be subject to Section I.3.

As described in Section II above, no provision of the Agreements or Member Center Terms & Conditions permits UCHealth to both be a Member Center and avoid the Section I.3 obligations applicable to Member Centers.  UCHealth's request that the Court nevertheless read

---

[2] UCHealth also insists it wanted, as part of such a "mutual" agreement, for NKR to agree to the inclusion of numerous other provisions, supposedly to comply with "applicable law."  It is curious that UCHealth purportedly did not decide it ought to comply with "applicable law" until five years into the parties' relationship.  In any event, UCHealth's allegations concerning the proposed amendments to comply with "applicable law" are a red herring—UCHealth's goal here is to be a Member Center but not subject to the Section I.3 requirements with which Member Centers must comply.  *See* Compl. ¶¶ 42.c.-d.

into the Agreements a purported "right" to such an arrangement amounts to a request that the Court rewrite the Agreements to reflect the result that UCHealth was unable to achieve during contract negotiations. However, it is black letter law in Colorado that "[c]ourts may not rewrite clear and unambiguous contract provisions." *Bledsoe Land Co. LLLP v. Forest Oil Corp.*, 277 P.3d 838, 842 (Colo. App. 2011) (citing *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo.1990)); *Radiology Prof'l Corp. v. Trinidad Area Health Ass'n, Inc.*, 577 P.2d 748, 751 (Colo. 1978) ("Courts possess no authority to rewrite contracts and must enforce unambiguous contracts in accordance with their terms."); *see also Ray v. Raj Bedi Revocable Tr.*, 3:19-CV-711 DRL-MGG, 2020 WL 1184755, at *10 (N.D. Ind. Mar. 11, 2020) (the "purpose of the Declaratory Judgment Act is to declare rights that exist, not to make new ones"). Because Paragraphs 42.a. and 42.c. fail to state a claim for an existing legal or contract right, they should be dismissed. *See Ray*, 2020 WL 1184755, at *10 (dismissing claim for declaration of rights under contract which cited no contract provision or state law in support thereof because the "court is not in the business of making contracts" and "will not write a new contract for the parties or supply missing terms.") (quotation omitted).

### 2.   Section I.3 is not unconscionable or illegal.

Tellingly, UCHealth apparently recognizes it has no contractual or legal basis for the declaration sought in Paragraph 42.c., because it goes on in Paragraph 42.d. to request that the Court relieve it of the obligation to comply with Section I.3 by declaring one method of performance provided therein—*i.e.*, the fees—unenforceable. UCHealth baldly alleges that the Section I.3 fees are allegedly "unconscionable, anti-competitive and contrary to law, specifically NOTA." None of these asserted grounds state a cognizable legal basis for avoiding Section I.3.

*First*, UCHealth has not alleged, and cannot plausibly allege, facts supporting its bald allegation that the Section I.3 fees are unconscionable. Under Colorado law, "a party seeking to

avoid the enforcement of a contract on unconscionability grounds must show both procedural and substantive unconscionability." *Scott v. Honeywell Int'l Inc.*, 14-CV-00157-PAB-MJW, 2015 WL 1517527, at *7-8 (D. Colo. Mar. 30, 2015). Colorado courts look to the following factors as relevant to unconscionability:

> [1] standardized agreement executed by parties of unequal bargaining strength, [2] lack of opportunity to read or become familiar with the document before signing it, [3] use of fine print in the portion of the contract containing the provision, [4] absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated, [5] the terms of the contract, including substantive unfairness, [6] the relationship of the parties, including factors of assent, unfair surprise and notice, and [7] all the circumstances surrounding the formation of the contract, including its commercial setting, purpose and effect.

*Id.* (quoting *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo.1986)).

Here, UCHealth has not alleged any facts concerning substantive or procedural unconscionability, nor can it. To the contrary, UCHealth is hardly an unsophisticated contracting party lacking bargaining power or quality legal representation. As UCHealth alleges, it is a political subdivision of the State of Colorado. Compl. ¶ 1. According to UCHealth's website, it is a "$5 billion organization with more than 24,000 employees and a large, integrated network of hospitals."[3] In contrast, as shown in the 2018 Form 990 for NKR attached as Exhibit 9 to the Complaint, NKR is a small non-profit with net assets of approximately $1 million in 2018. UCHealth has not alleged, and will never be able to plausibly allege, that despite being a multi-billion dollar health system and a subdivision of the State government, it somehow lacked bargaining power as compared to NKR, which NKR allegedly unfairly used to its advantage to

---

[3] https://www.joinuchealth.org/About-Us. These facts concerning UCHealth found on its website are not subject to dispute and are properly subject to judicial notice. *See New Mexico ex rel. Balderas v. Google, LLC*, 489 F. Supp. 3d 1254, 1257 (D.N.M. 2020).

force Section I.3 on UCHealth.  Accordingly, this claim should be dismissed.  *See Scott*, 2015 WL 1517527, at *9 (dismissing unconscionability claim where plaintiff failed to plead facts showing contract was procedurally and substantively unconscionable); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (affirming district court's dismissal of claim where Plaintiff's allegations were mere "conclusory and formulaic recitations").

*Second*, UCHealth has not alleged any factual or legal basis for its statement that the Section I.3 fees are "anti-competitive."  Such a bald statement does not suffice to state claim, and this claim should be dismissed.  *See Khalik*, 671 F.3d at 1193.

*Third*, UCHealth's allegations that the Section I.3 payment amounts to "profiting on organs" barred by NOTA, Compl. ¶ 18.d., are both baseless and scurrilous.  NOTA provides:

> It shall be unlawful for any person to knowingly acquire, receive, or otherwise transfer any human organ for valuable consideration for use in human transplantation if the transfer affects interstate commerce.  The preceding sentence does not apply with respect to human organ paired donation.

42 U.S.C.A. § 274e(a).  Here, Section I.3 on its face plainly does not provide for payment in exchange for the provision of kidneys.  Rather, and as UCHealth acknowledges in its Complaint, the Section I.3 fee is the opposite—it is required to be paid by a Member Center only as a result of ***lack of kidneys*** provided, *i.e.* the deficit in net kidney chains started.  Compl. ¶ 18(d).  Member Centers may also comply with Section I.3 by putting an equal number of kidneys into the NKR network as they take out.  The purpose of Section I.3 is to encourage Member Centers to enter into the system at least as many potential donors as the number of matches received from the system by Member Center recipient patients.  If Member Centers have no obligation to contribute to the nationwide network, the network and the ability to make high quality donor matches breaks down, to the detriment of recipients in need of kidneys.

UCHealth acknowledges that, as of the time it filed the Complaint, it had an NCS deficit of -8, Compl. ¶¶ 18(e), 26, but its Section I.3 obligations had been waived during the time it was an All In/Partner Center in good status, *see id.* ¶ 29.  If anything, awarding UCHealth its requested relief of a declaration that it need not comply with Section I.3 would allow ***UCHealth***, not NKR, to unfairly profit from receipt of kidneys by removing the incentive for UCHealth put back into the NKR network an equal number of kidneys as it has admittedly taken out.  As a result, this claim should be dismissed.  *See Commonwealth*, 680 F.3d at 1202 ("Dismissal is appropriate if the law simply affords no relief.").

### 3.    UCHealth's remaining requests for declarations fail to state a claim.

UCHealth's remaining requested declarations may be quickly disposed of.  In Paragraph 42.b., UCHealth requests a declaration affirming its characterization of NKR's response to the surprise January 27, 2021 letter as having been in "bad faith".  NKR denies it mischaracterized, or acted in bad faith with regard to, the January 27, 2021 letter and ensuing discussions between the parties.  Regardless, taking UCHealth's allegations as true, UCHealth failed to state a cognizable legal basis for Paragraph 42.b.  No Colorado law affords UCHealth the right to a declaration affirming UCHealth's characterization of NKR's response to a letter.   To the extent UCHealth's claim is based on Colorado's duty of good faith and fair dealing, that reliance is misplaced.   As explained in Section IV.C.2. below, that duty requires "only that the parties perform in good faith ***the obligations imposed by their agreement***."  *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1363 (Colo. App. 1994) (emphasis added).  However, there is no allegation that NKR failed to perform a discretionary obligation in the Agreements in good faith, and NKR has no legal "good faith" obligation to agree with UCHealth's characterizations of its proposed second amendment.  *See id.*

Finally, in Paragraph 42.e., UCHealth requests that a declaration that it is entitled to recover its attorneys' fees in this litigation. UCHealth's requested declaration puts the cart before the horse—its request for attorneys' fees is not properly brought as a standalone claim for relief because it is not an actual damage resulting from the purported legal claim. *See Bunnett v. Smallwood*, 793 P.2d 157, 160 (Colo. 1990) (attorneys' fees and costs are not considered actual damages because they are not the legitimate consequences of the breach of contract sued upon). Accordingly, to the extent this is a standalone claim, it should be dismissed.

For the reasons given above, none of the requested declarations in Paragraph 42 of the Complaint have any legal basis, and the declaratory judgment claim should be dismissed.

### B.  This Court should decline to exercise its discretion to hear UCHealth's declaratory judgment claim.

Even if the Court concludes that UCHealth has stated a cognizable claim for declaratory judgment sufficient to survive Rule 12(b)(6)—which it has not—this Court may and should decline to exercise its discretion to consider UCHealth's declaratory judgment claim.

As relevant here, the Declaratory Judgment Act, 28 U.S.C. § 2201, provides:

> In a case of actual controversy within its jurisdiction, . . ., any court of the United States, upon the filing of an appropriate pleading, **may** declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a) (emphasis added). "Because of the Act's use of the word 'may,' the Supreme Court has held it confers upon courts the power, but not the duty, to hear claims for declaratory judgment." *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 980 (10th Cir. 2012); *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994) ("The Supreme Court has long made clear that the Declaratory Judgment Act 'gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.'") (quoting *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962)).

In determining whether to exercise the discretion to hear the claim, courts consider the following factors:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Mid-Continent*, 685 F.3d at 980-81 (quoting *State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir.1994)).  "Courts in this district have additionally looked to a sixth factor set forth in *Constitution Associates v. New Hampshire Insurance Co.*, 930 P.2d 556 (Colo. 1997)—whether the declaratory judgment action is 'independent of and separable from the underlying action.'" *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1195 (D. Colo. 2018). Courts have "dismissed declaratory judgment claims in circumstances similar to those presented here—where a plaintiff seeks declaratory relief that would resolve the same issues raised by other claims brought in the same action." *Id.*

Here, the fourth *Mhoon* factor does not apply because there is no parallel litigation between the parties in state court.  However, as described below, all of the remaining *Mhoon* factors weigh in favor of the Court dismissing UCHealth's declaratory judgment claim.

### 1. Declaratory relief will not settle the controversy and will not serve to clarify the legal relations at issue.

The first two *Mhoon* factors—whether a declaratory action would settle the controversy and whether it would serve a useful purpose in clarifying the legal relations at issue—weigh in favor of dismissal here.  As explained above, none of UCHealth's requested declarations have any legal basis.  Additionally, none of the requested declarations would settle the purported controversy or usefully clarify the legal relations at issue going forward.

As to Paragraphs 42.a. and b., declaring UCHealth's intent behind the January 27, 2021 letter or that NKR allegedly in bad faith mischaracterized that intent will not settle the controversy or clarify the legal relations between the parties.  It does not matter whether, despite its statement in the January 27, 2021 letter that it "elect[ed] to no longer be an All In Center," UCHealth supposedly actually did not intend to unilaterally terminate the All In Addendum by that letter if for no other reason than NKR has the contractual right to revoke Partner Center status at any time.[4]  *See* Ex. 2 to Compl. at 42 ¶ I.3. (second).  Granting the requested declarations would, at most, provide UCHealth with the emotional satisfaction that the Court agrees with its characterizations of its and NKR's intent concerning the January 27, 2021 letter but would have no effect on the parties on a going forward basis, which is not an appropriate use of a declaratory judgment.  *See Morris v. Fallin*, CIV-16-1297-D, 2017 WL 1683906, at *5 (W.D. Okla. Mar. 29, 2017) (recommending dismissal of claim for declaratory judgment which requested "retrospective opinion" that defendant wronged plaintiff, which "is an impermissible use of a declaratory judgment"), *report and recommendation adopted*, CIV-16-1297-D, 2017 WL 2709755 (W.D. Okla. June 23, 2017); *see also Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011) (declaratory judgment claim must assert claim for relief that, if granted, would affect future behavior of defendant toward plaintiff).

As to Paragraphs 42.c. and d., declaring that UCHealth is not required to pay the Section I.3 fees will not settle the controversy or clarify the legal relations between the parties.  Despite UCHealth's effort to frame this controversy as one over an alleged "perpetual" $1,000 fee per

---

[4] For this reason, any request by UCHealth to amend its Complaint to cure the deficiencies therein would be futile and should not be permitted.  *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("[T]he district court may dismiss without granting leave to amend when it would be futile to allow the plaintiff an opportunity to amend his complaint.").

each NCS deficit, the fee is only part of the story.  Section I.3 requires a Member Center to restore as many kidneys to the NKR network as it has taken out for the protection of kidney donors and recipients, and declaring that UCHealth need not pay the fees in Section I.3 after its requested transition to Member Center status will not relieve UCHealth of the obligation under Section I.3 to put back in the NKR network an equal number of kidneys as it has taken out.  That is, Section I.3 is about parity in kidneys, not fees, and declaring UCHealth need not pay the fee will not absolve UCHealth of its obligation to ensure parity.  Thus, a declaration will not resolve the entirety of the dispute between the parties, and the Court need not exercise its discretion to hear these claims.  *See TBL*, 285 F. Supp. 3d at 1196 (dismissing claim for declaratory judgment where declaration "would not resolve the entirety of the dispute").

As to Paragraph 42.e., declaring that UCHealth would be entitled to attorneys' fees if it is the prevailing party in "a legal action to enforce any provision of [the Agreements]," Ex. 4 to Compl. at ¶ 5, would simply restate contract language and will not resolve the controversy or clarify the legal relations between the parties.  *See TBL*, 285 F. Supp. 3d at 1196.

## 2.     UCHealth interposed its declaratory relief claim for improper, procedural fencing purposes.

The third *Mhoon* factor—whether the plaintiff is using the action for improper procedural fencing purposes—weighs in favor of dismissal as well.  UCHealth filed this lawsuit not because it has legitimate claims but rather either in an effort to win the race to the courthouse to secure its chosen forum or as an attempt to bully NKR to accept new and different contract terms than those to which the parties agreed.

Here, after receiving the surprise January 27, 2021 letter, NKR proposed multiple times that the parties engage in the dispute resolution process required by the First Amendment. Compl. ¶¶ 22, 27.  That clause provides, as relevant here:

> At the written request of either party, the parties will attempt to resolve any dispute arising under or relating to this Agreement through informal means.  If necessary, each party will select a senior management representative who does not devote substantially all of his or her time to performance of this Contract. . . . The representatives will use commercially reasonable efforts to resolve the dispute without the necessity of any formal proceeding.

Ex. 4 to Compl. at ¶ 10.  Despite the fact that this provision plainly contemplates that the informal dispute resolution be carried out by *a* senior management representative on each side, UCHealth insisted that counsel be present at the discussion.  Ex. 10 to Compl.  On March 25, 2021—the day before this lawsuit was filed on March 26, 2021—UCHealth's outside counsel continued to maintain that attorneys must attend, and he provided available dates for the discussion.  *Id.*  NKR's attorney responded on March 25, stating "[i]f UCH is preventing [the UCHealth representative] from having an informal phone call with [the NKR representative], you have left us with no choice but to maintain our position that UCH terminated the All-In Addendum, and converted UCH to a regular Member Center."  *Id.*

UCHealth then filed suit the next day; however, UCHealth must have been planning this suit and laying the groundwork for it for weeks while at the same time leading NKR to believe UCHealth would participate in informal dispute resolution.  It is simply not plausible that, in the hours between receiving NKR's email on March 25 and filing this case on March 26, UCHealth decided to file suit, retained for that purpose new outside counsel (other than the K&L Gates attorney with whom NKR had been negotiating), who then prepared eight drafts of the Complaint  (judging by the document number in the bottom left corner of the Complaint). Rather, UCHealth was planning to file this lawsuit while simultaneously leading NKR to believe UCHealth would engage in the contractually required dispute resolution.

Thus, after affirmatively lulling NKR into believing that amicable negotiation was still possible, UCHealth filed this action as an effort either to secure its chosen forum or bully NKR

into accepting a new contractual arrangement to which it does not and is not required to agree. The Court should not condone such behavior by choosing to exercise jurisdiction over the declaratory judgment claim. *AmSouth Bank v. Dale*, 386 F.3d 763, 790 (6th Cir. 2004) (reversing district court's decision to hear action because declaratory judgment is not tactical device to be used to gain advantage by "defendant who races to the courthouse while at the same time assuring the plaintiff that the defendant is still interested in at least discussing settlement options"); *St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1170 (10th Cir. 1995) (affirming district court's declining to hear declaratory judgment action where court perceived plaintiff to be using action for procedural fencing purposes); *Nationwide Mut. Ins. Co. v. C.R. Gurule, Inc.*, 148 F. Supp. 3d 1206, 1228 (D.N.M. 2015) (retaining jurisdiction despite procedural fencing would encourage litigants to "engage in unfair practices").

### 3.    An alternative remedy is better or more effective, and UCHealth's declaratory judgment claim is not independent from that remedy.

The fifth and sixth factors—whether there is an alternative remedy which is better or more effective and whether the declaratory judgment action is independent of and separable from the underlying action—also weigh in favor of dismissal. Here, UCHealth alleges an alternative remedy, a breach of contract claim which has the same factual basis and seeks largely same relief as its declaratory judgment claim. *Compare, e.g.*, Compl. ¶¶ 42.a.-b. (requesting declaration that the January 27, 2021 letter did not constitute a unilateral termination of the All In Addendum and NKR in bad faith mischaracterized it as one) *with* Compl. ¶ 48 (alleging NKR in bad faith mischaracterized the January 27, 2021 letter as a unilateral termination).

As explained below, UCHealth's breach of contract claim also fails to state a claim for relief. However, the resolution of the contract claim will necessarily resolve the same facts and issues as those presented in the declaratory judgment claim. Thus, the declaratory judgment

claim is not independent of or separable from the breach of contract claim, and it should be dismissed. *See TBL*, 285 F. Supp. 3d at 1196 (declining to hear declaratory judgment claim where parties' obligations under contract would necessarily be resolved in context of plaintiff's breach of contract claim); *Golf Club, L.L.C. v. Am. Golf Corp.*, CIV-16-946-D, 2017 WL 1655259, at *2 (W.D. Okla. May 2, 2017) (dismissing declaratory judgment claim as duplicative of breach of contract claim because "Plaintiff's breach of contract claim necessarily will require a determination of the same issues that Plaintiff seeks to resolve by declaratory judgment").

Accordingly, all the applicable *Mhoon* factors weigh in favor of the Court declining to hear the declaratory judgment claim, and it should be dismissed.

### C.   Plaintiff failed to plead a claim for breach of contract.

UCHealth's Second Claim for Relief is labeled as "Breach of Contract," however, it is pled as a breach of the implied duty of good faith and fair dealing.  It is unclear whether UCHealth is pursuing an alleged breach of contract claim or a breach of the duty of good faith and fair dealing claim.  Regardless, as discussed below, UCHealth failed to state a claim for either and this claim should also be dismissed.

#### 1.   UCHealth failed to state a claim for breach of contract.

UCHealth vaguely alleged that NKR "breached the Agreements" in its response to the January 27, 2021 letter.  Compl. ¶ 47.  This general allegation is insufficient to state a claim because UCHealth failed to identify a specific provision of any contract that NKR allegedly breached.  Indeed, there is no provision in the Agreements requiring that NKR respond in "good faith" (as subjectively judged by UCHealth) to surprise letters demanding new contract terms. *See Miller v. Metro. Life Ins. Co.*, 17 Civ. 7284 (AT), 2019 WL 4450637, at *5 (S.D.N.Y. Sept. 17, 2019) ("[U]nder the law of [Colorado], a plaintiff must identify a specific provision of the contract that the defendant breached.") (citing *Pernick v. Computershare Tr. Co., Inc.*, 136 F.

Supp. 3d 1247, 1266 (D. Colo. 2015)).  Not only did UCHealth fail to identify the specific

provision in a contract that NKR allegedly breached, it failed to even identify which of the seven

contracts it defined together as the "Agreements" was breached.  *See* Complaint at  ¶16.

Accordingly, to the extent UCHealth is alleging a breach of contract claim, that claim should be

dismissed.  *See Snyder v. ACORD Corp.,* 14-cv-01736-JLK, 2016 WL 192270, at *12 (D. Colo.

Jan. 15, 2016) (dismissing breach of contract claim "because Plaintiffs have not identified any

actual provisions of the [contracts] or explained how Defendants breached them"); *see also*

*Pernick*, 136 F. Supp. 3d at 1266 ("Plaintiff fails to identify contractual provisions suggesting

[Defendant's alleged obligation] and, as a result, fails to state a claim for breach of contract.")

(applying Colorado law).

> **2.      UCHealth failed to state a claim for breach of the duty of good faith and fair dealing.**

To the extent UCHealth's claim for breach of contract actually is a claim for breach of

the implied duty of good faith and fair dealing, it also fails to state a claim for relief.  This duty

"applies when one party has discretionary authority to determine certain terms of the contract."

*Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995), *as modified on denial of reh'g* (Jan. 16,

1996).  Thus, the implied duty of good faith and fair dealing is breached when a "party uses

discretion conferred by the contract to act dishonestly or to act outside of accepted commercial

practices to deprive the other party of the benefit of the contract."  *ADT Sec. Servs., Inc. v.*

*Premier Home Prot., Inc.*, 181 P.3d 288, 293 (Colo. App. 2007).  The duty of good faith and fair

dealing does not obligate a party to accept a material change in the terms of the contract or to

assume obligations that vary or contradict the contract's express provisions.  *Wells Fargo*, 872

P.2d at 1363; *see also ADT Sec. Servs.,* 181 P.3d at 293.  Nor does the duty of good faith and fair

dealing inject substantive terms into the parties' contract.  *Id.*  Rather, it requires only that the parties perform in good faith the obligations imposed by their agreement.  *Id.*

Here, UCHealth does not identify any provision in the Agreements which conferred discretion on NKR in performing the Agreements and does not allege that NKR abused its purported discretion in the performance of any term of the Agreement.  Rather, UCHealth claims NKR supposedly acted in "bad faith" in "mischaracterizing" UCHealth's proposal in the January 27, 2021 letter to materially change the terms of the parties' Agreements.  Compl. ¶ 48.  No Colorado law imposes on a party to a contract a "good faith" duty to respond to extracontractual communications by its counterparty in the manner in which the counterparty desires.

Therefore, UCHealth has failed to state a claim for breach of the duty of good faith and fair dealing and its Second Claim for Relief should be dismissed.  *See Kaspryzk v. PNC Bank, Nat. Ass'n,* No. 13-CV-00247-RBJ-KMT, 2013 WL 3895069, at *6–7 (D. Colo. July 29, 2013) (dismissing claim for breach of good faith and fair dealing because "Plaintiff's Complaint does not identify any discretionary term regarding the performance of a contract" and "to the extent Plaintiff seeks to impose new duties upon the defendant and grant Plaintiff new rights relating to the modification of the [contract's] original terms, the defendants are correct that the claim fails"); *see also Young v. Wachovia Mortg. Co.,* No. 11-CV-01963-CMA, 2011 WL 6934110, at *5 (D. Colo. Dec. 30, 2011) (dismissing claim for breach of good faith and fair dealing for failure to state a claim because Plaintiffs failed to point to any discretionary terms in a contract that would support their claim).

## V.     CONCLUSION

For the reasons stated above, UCHealth has failed to plead any viable claims for relief, and its lawsuit against NKR should be dismissed.

Respectfully submitted this 7th day of May, 2021.

*s/Erin M. Eiselein*
Erin M. Eiselein
Anna-Liisa Mullis
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
Phone: 303.223.1100
Fax: 303.223.1111
eeiselein@bhfs.com
amullis@bhfs.com

*Attorney for Defendant Kidneylife*
*Foundation, Inc. d/b/a National Kidney*
*Registry*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 7th day of May, 2021, I electronically filed the foregoing **MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND JURY DEMAND** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel:

Stephen D. Gurr
M. Adam Lewis
Cynthia Lowery-Graber
POLSINELLI PC
1401 Lawrence Street, Suite 2300
Denver, CO 80202
(303) 583-8225
sgurr@polsinelli.com
adam.lewis@polsinelli.com
clowery-graber@polsinelli.com

*Attorneys for Plaintiff*

<u>*s/Kate M. Meade*</u>
Kate M. Meade, Paralegal
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 17th Street, Suite 2200
Denver, CO 80202
*phone:* 303-223-1100; *fax* 303-223-1111